IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2017

## STATE OF TENNESSEE v. ANTWAIN DESHUN COLEMAN, AKA ANTWAIN MACKEY

**Appeal from the Criminal Court for Davidson County**
**No. 2016-A-36      J. Randall Wyatt, Jr., Judge**

_____

## No. M2016-02334-CCA-R3-CD

_____

Defendant, Antwain Deshun Coleman, also known as Antwain Mackey, was indicted for aggravated robbery. He later entered a negotiated guilty plea to facilitation of aggravated robbery in exchange for a sentence of six years as a Range I, standard offender. The trial court determined that Defendant should serve the sentence in confinement. Defendant appeals his sentence, arguing that the trial court abused its discretion by denying an alternative sentence. After a review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Antwain Deshun Coleman.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Glenn R. Funk, District Attorney General; and Amy Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In January of 2016, Defendant and Renaldo Martin were indicted for aggravated robbery. Defendant eventually entered a guilty plea to facilitation of aggravated robbery in exchange for a sentence of six years. The manner of service of the sentence was to be determined by the trial court at a sentencing hearing.

At the guilty plea hearing, counsel for the State explained that, had the case the gone to trial, the proof would have shown the following:

[O]n January 9, 2015[,] Michael Meacham was employed as a driver for Nashville Cab Company. On that date at about 1:35 in the morning[,] he was dispatched to pick up a fare identified as Shelia at the TWA apartments at 526 South Fifth.

When Meacham arrived at the location[,] he telephoned Sheila and told her that he was there, but she said that she was getting her kids ready and would be out in a minute[.] [W]hile he was waiting[,] two subjects approached him and told him to pull up closer to the apartment because she couldn't bring her kids that far.

Mr. Meacham pulled up closer to the apartment and began talking on his phone and about five minutes later he heard a loud pop that sounded like a gunshot. He looked out and saw the two subjects standing at the driver's side door.

They were both pointing handguns at his head. They took his Iphone 5, his wallet that contained about $50 in cash, and a debit card, and his driver's license[.] [T]hey then fled on foot. Mr. Meacham drove to 500 Main Street and borrowed a phone and called the police department. He was able to provide a physical and clothing description of the suspects. Latent prints were recovered from the driver's side door and identified as the co-defendant's in this case who has just recently pled. The co-defendant was developed as suspect through phone records and he matched the physical description of one of the two suspects that were involved in the crime. He then came and spoke with police officers and implicated himself in this crime along with co-defendant, Mr. Coleman. Mr. Coleman was eventually arrested on this case and he was put into a photographic line-up where Mr. Meacham was able to identify him with a 70 percent assurance. This occurred here in Davidson County . . . .

At the sentencing hearing, the trial court heard testimony from Mr. Meacham, the victim. He explained that after the robbery, he was unable to continue driving a taxicab as a result of anxiety and depression. The robbery made the victim feel as if he were always "on edge" and affected every area of his life. The victim felt that Defendant should serve his punishment "in full."

Defendant testified that he was sorry he was "in the wrong place at the wrong time with the wrong person." He explained that he and the co-defendant were "sitting there drinking and smoking" and the "next thing [he] kn[e]w" they were robbing the cab driver. Defendant felt that, at the time of the sentencing hearing, he had "served his

time."[1]  Defendant informed the trial court that he had completed two programs—"[t]hinking for a change and victim impact"—during his incarceration and that he was going to AA meetings.

Defendant admitted that he had a prior conviction for aggravated robbery. He received this conviction his senior year of high school and, as a result of the conviction, lost a full scholarship to play football at Ole Miss. Defendant explained the underlying facts from his aggravated robbery conviction. He was living near Jackson, Tennessee, and was drinking alcohol and smoking marijuana one night and participated in a home invasion of a drug dealer. The "pizza man" showed up at the house during the home invasion and was robbed. Defendant did not make excuses for his actions or prior conviction, but asked the trial court for alternative sentencing so that he could "look out for" his family and raise his child.

Willie Coleman, Defendant's grandfather, testified at the sentencing hearing. He explained that Defendant was a good kid, but when "his mother got sick and she couldn't really control him . . . he started hanging out with bad people." Mr. Coleman wanted to see Defendant "go to rehab" and "stop his alcohol and drinking." Latonya Green, the mother of Defendant's four-year-old son, also testified. She informed the trial court that she needed Defendant's assistance in raising their son and that Defendant would live with her if he were not incarcerated.

At the conclusion of the hearing, the trial court acknowledged that Defendant's family seemed stable but determined that Defendant would serve the sentence in order "to protect society from someone with a history of criminal conduct" and to avoid depreciating the seriousness of the offense. The trial court granted Defendant's request for an order to an in-custody treatment program but did not guarantee Defendant's acceptance to such a program.

Defendant filed a timely notice of appeal. He challenges the trial court's denial of an alternative sentence.

*Analysis*

On appeal, Defendant argues that the trial court should have granted either probation or community corrections.[2]  Specifically, Defendant challenges the trial court's use of Defendant's criminal record and the need for deterrence. Defendant insists that his

---

[1] At the time of the hearing, Defendant had been incarcerated for eight months.

[2] Despite the blanket statement that the trial court erred in failing to grant a community corrections sentence, Defendant's brief does not further address this issue. Therefore, any challenge to the denial of a community corrections sentence is waived. *See* Tenn. Ct. Crim. App. R. 10(b).

criminal record "could hardly be classified as 'lengthy' for the purposes of enhancement." The State disagrees.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The same standard of review applies to a trial court's decision regarding "probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *see also State v. King*, 432 S.W.3d 316, 325 (Tenn. 2014) (applying the same standard to a judicial diversion). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Tennessee Code Annotated section 40-35-102(3)(C) provides that "[p]unishment shall be imposed to prevent crime and promote respect for the law by . . . [e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants[.]" Tennessee Code Annotated section 40-35-104(c)(9) authorizes a "sentence to a community based alternative to incarceration . . . ." Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed," and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" T.C.A. § 40-35-103(5). Moreover, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

A defendant is eligible for probation if the sentence imposed is ten years or less. T.C.A. § 40-35-303(a). Although "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants," the defendant bears the burden of "establishing suitability" for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). A defendant who is sentenced as an especially mitigated or standard offender and who has committed a Class C, D, or E felony should be "considered as a favorable candidate for alternative

sentencing options," if certain conditions are met. T.C.A. § 40-35-102(5), (6)(A). The guidelines regarding favorable candidates are advisory. T.C.A. § 40-35-102(6)(D). In this case, Defendant was convicted of a Class C felony, received a six-year sentence, and was not convicted of any of the offenses listed in the statute rendering him ineligible for an alternative sentence. Therefore, Defendant was a favorable candidate for alternative sentencing.

Tennessee Code Annotated section 40-35-103(1) dictates that sentences involving confinement be based on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

In the present case, Defendant argues that the trial court improperly denied probation based on deterrence. To support his argument, he cites *Moten v. State*, 559 S.W.2d 770, 773 (Tenn. 1977) (holding deterrence is not a valid reason for denying a probationary sentence). That case was superseded by statute. *See State v. Hooper*, 29 S.W.3d 1, 6 (Tenn. 2000) (explaining the evolution of deterrence as a basis for the denial of probation). In other words, *Moten* is no longer binding precedent. Moreover, the trial court did not base its denial of an alternative sentence on deterrence. Rather, the trial court determined that incarceration was necessary to avoid depreciating the seriousness of the offense. The record supports this decision. *See State v. Trotter*, 201 S.W.3d 651, 656 (Tenn. 2006) (holding that denial of an alternative sentence may be based on sentencing consideration (B) alone). The trial court also denied an alternative sentence on the basis of Defendant's lengthy criminal history. Although the trial court made no finding as to Defendant's offender class, the presentence report indicated that Defendant's prior convictions could have rendered him a Range II, multiple offender. Defendant's convictions included not only aggravated robbery, but also convictions for felony theft and several misdemeanors. Defendant failed to successfully complete probation for the felony theft conviction. Despite his criminal history, the plea agreement specified that Defendant would receive a Range I sentence. The trial court did not abuse

its discretion in utilizing and considering Defendant's criminal history in denying an alternative sentence. Defendant has failed to establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded to the trial court's denial of alternative sentencing. Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE